## Case No. 15,614.

### UNITED STATES v. LLOYD.

[4 Blatchf. 427.] [1]

Circuit Court, S. D. New York. April 13, 1860.

WITNESS — IMPRISONMENT FOR WANT OF BAIL — APPLICATION FOR DISCHARGE.

1. A person arrested on a warrant issued under section 7 of the act of August 8, 1846 (9 Stat. 73, 74), as a witness on the part of the United States, in a criminal case, and imprisoned for want of bail, was, under the peculiar circumstances of the case, discharged on his own recognizance.

2. The hardships attending the administration of that statute, commented on.

This was an application by one Samuel Marlor, founded on a petition and affidavits, showing that he was imprisoned as a witness in behalf of the United States, and praying that he might be discharged from such imprisonment on his own recognizance or on reduced bail. He was arrested at the instance of the district attorney, in the latter part of March, upon a warrant issued pursuant to the seventh section of the act of August 8, 1846 (9 Stat. 73, 74), and required to give bail to appear as a witness in criminal prosecutions pending in this court against John Lloyd. Failing to furnish the bail required, he was committed to the custody of the marshal.

Charles H. Hunt, Asst. U. S. Dist. Atty.
John O'Rourke, for Marlor.

BETTS, District Judge. The petitioner is a non-resident of this district, and had, when he was arrested, just returned from a voyage to England, after an absence of several months. The indictments against Lloyd charge a series of frauds committed by him against the revenue laws, by the falsification of invoices, and by other criminal acts accompanying the importation of goods to this port from foreign countries, to a large amount, and continued for a considerable period of time. Marlor was, during a portion, if not the whole of the time, a confidential clerk of Lloyd, and it was upon his disclosures that the prosecutions were chiefly founded. He was employed by the United States attorney and the officers of the customs, in collecting and arranging original invoices and letters of Lloyd's, and having them prepared to be used, with his own testimony, as evidence on the trial of Lloyd. Whilst in that confidential relation to the public officers, he was entrusted with some of those documents, and had free access to many other highly important ones. Under these circumstances, he suddenly left the country and went abroad. On his departure, many of those papers and vouchers were found to be missing from the places where they were deposited whilst he had the means of access to them at his pleasure. The district attorney imputed this surreptitious abstraction to Marlor, and prayed that he might be put under stringent securities, so as to assure his personal appearance in court, and also the production of the lost vouchers. Marlor admitted that some of the papers had been entrusted to him, but asserted that he delivered back to the district attorney's office all which he ever had in his charge. On those facts, the judge ordered the witness to give securities for his appearance in court, in the sum of $5,000, and, neither that nor any other sum being offered by him, he was committed to the custody of the marshal, the judge remarking, that if the witness produced the missing vouchers, the amount of the surety, which was designed also to ensure his presence in obedience to a subpœna duces tecum, should the government elect to issue one, would be materially diminished.

On the present application, the representation of facts made when the witness was first arrested, is substantially repeated by the assistants having charge of the district attorney's office, with the farther statement, that the witness has never returned to that office the papers and vouchers before alleged to have been clandestinely withdrawn therefrom. The witness now also files his own deposition, asserting positively that he never abstracted any papers, and has none of them in his possession or control now; that he did not leave the country clandestinely, but went abroad publicly, on family and private business, with the intention of returning here speedily; that he has a family, and is a permanent resident and householder in Providence, Rhode Island, and has been so for thirteen years; that he is engaged there in business as a jeweller, and in a manufacturing establishment, and likewise in constructing a patented discovery, in which he has a personal interest; and that he has returned from his visit abroad, to abide in Providence permanently. He likewise asserts that he is in a very critical state of health, and is confined in jail under circumstances of great bodily exposure and suffering from bad accommodations, and from the want of indispensable medical attendance, and of the care of his family, in his debility and sickness. No testimony is offered, on either side, showing the pecuniary condition or responsibility of the witness.

This case illustrates some of the manifold hardships and inequities to which witnesses are liable, under the authority and administration of the laws which subject them, in criminal cases, to be imprisoned in close confinement, at the discretion, in a good measure, of public prosecutors, to await a summons into

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

court to testify on behalf of the United States. These laws afford no exemption for the aged, or the feeble, or those who, from infirmities of body or mind, are dependent on the attention and the services of others, or who must be separated by such arrest or detention, from the most stringent calls of their own business, or from supplying help or solace to their families or friends, in the extremest exigencies of sickness or destitution. None but those who can furnish competent bail, that is, who have the command of money or credit, can exonerate themselves from instantaneous incarceration for an indeterminate period of time, and, from being imprisoned no less absolutely, with every privation of exercise, wholesome food and personal comforts, than if abandoned culprits. This cruel exaction not only falls upon and overpowers the citizen at home, amidst acquaintances and friends with whom he may retain such degree of intercommunication as may not be inconsistent with his safe custody, thereby mitigating, in some degree, the severity of the injustice to him individually, but, in practice, a stranger on a journey, or pursuing his occupations away from his residence or family, is equally subject to instant arrest and imprisonment, if he knows, or is supposed to know, facts connected with a criminal transaction by an accused party, with whom he may have no connection other than perhaps accidental knowledge of some particular which may tend to convict the suspected party of having committed a criminal offence. It is to be apprehended, moreover, that this oppressive power is not always exercised with the most prudent precaution, or kept in force only during the shortest period possible to secure to the government the benefit of testimony thus sought for; but prosecutions are allowed to be procrastinated, under trivial excuses, so as to cause deeper wrongs and injuries to witnesses than is reasonably necessary.

The case in hand brings to notice some of the bitter privations which the enforcement of this power of imprisoning witnesses may naturally inflict upon them, when they are helpless of all relief. The petitioner had just landed in this city from a foreign voyage, and was here united with his wife and only child, who had come, according to his deposition, from their home in Providence, to meet him on his arrival, and was, when arrested as a witness, about to depart with them to their home. He is evidently painfully enfeebled in health, from a severe and dangerous malady, and requires medical attendance and careful attention and diet. He has been, for many years, a resident and householder in Providence, but possesses no means, and has no friends to give such security for his personal appearance in court as the government is entitled to demand, upon its prima facie evidence of the materiality of his testimony in support of the indictment pending in its behalf. The court is now in session before

which the indictment must be tried; and there is, moreover, a strong color for the claim on the part of the government for extraordinary aid to be supplied to it, to compel his attendance as a witness. This naturally led to his being called upon for extraordinary security, and to his bodily detention for want of such bail, and, consequently, to the imprisonment which followed, although that imprisonment must be in a place imminently hazardous to his health, and even to his life. The witness, by his affidavit, now produced, swears positively that he has not in his possession, or under his control, any of the papers or vouchers referred to, and that all of those papers which were ever in his possession were returned by him to the office of the district attorney, before he went abroad; that he is ready to attend court and testify in the cause, and has never been absent for the purpose of avoiding doing so; and that, on the contrary, he immediately returned here, for the purpose of being present as such witness, on learning from his wife that there was a report here that he designed keeping away from being a witness on the trial. He further avers, that his business and family relations are all in this country and that he intends to remain here, subject to any subpoena in the cause. The government furnishes no testimony directly contradicting any of these statements, and does not prove that the petitioner is able to give bail for his appearance, or that there is any fact justifying a presumption that he will not be amenable to a subpoena, whenever he may be required as a witness, or that such a personal recognizance in the case as would be ordinarily required of a householder and resident here, would not be ample security to secure his personal attendance at court.

Under these circumstances, I shall order the petitioner to be discharged from imprisonment on his executing his own recognizance in $1,000 penalty, to appear and testify in court on the trial of the indictments, when notified to do so on the part of the United States, at any time during the term.